PAUL PHILLIPS *v.* STATE OF INDIANA.

[No. 1271S381. Filed May 7, 1973.]

*Marlin K. McDaniel,* of Richmond, *Albert W. Ewbank,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

DeBRULER, J.—This is an appeal from a conviction of theft (IC 1971, 35-17-5-3, being Burns § 10-3030) after a trial by jury in the Wayne Circuit Court, Judge James Puckett presiding. Appellant was sentenced to the Indiana State Prison for one to ten years and fined $1000.00. He bases his appeal on the contention that the evidence at trial was insufficient to sustain his conviction.

Five of the State's twelve witnesses lived in separate houses across the street from the City Cemetery in Cambridge City,

Indiana. They all testified that in the late evening and early morning hours of June 11th and 12th, 1970, they were in their respective homes when their attention was drawn to a blue panel truck with a loud engine and a white painted stripe on the side that continued to circle the block and drive pass the cemetery. The truck circled the block for some time, as many as twenty times according to one of the witnesses, and finally stopped in front of the entrance to the cemetery. All of the five witnesses remained at their homes but separately continued to observe the truck's activity. They testified that some moments after the truck stopped they heard another motor start up for a few seconds and then fall silent. Three of the five stated that they recognized the second engine as being that of a tractor lawnmower used to cut the grass at the cemetery. Two of the five stated that as the second engine stopped they heard what they described as the sound of boards rattling on the bed of the truck. None of the witnesses saw anyone in the truck or saw anyone put anything in the truck during the time when it was stopped by the entrance.

After the second engine had stopped the truck started up and drove down the street, but did not attempt to circle the block again. The witnesses were not able to agree on the precise time the truck had stopped in front of the cemetery. One stated that it was about midnight; another said between 12:00 a.m. and 12:30 a.m.; while a third witness placed the hour as late as 1:00 a.m. Two of the witnesses became suspicious and phoned the police. The police subsequently investigated the cemetery that same night and found that a shed had been broken into and a tractor mower was missing. The cemetery caretaker and cemetery manager both testified that the mower had been in the shed at the close of the work day on June 11th.

Officer Mannis Boyer of the Cambridge City Police Department testified that he was riding in a patrol car on the night of the incident with another officer. At 1:00 a.m. they

stopped a green panel truck with a white stripe painted on the side because its license plate light was not operating. They apparently were informed of the suspicious actions of a similarly described truck because the officers contacted several of the witnesses and had them come down to where the truck was stopped. Four of the State's witnesses identified the truck as the same one that was at the cemetery earlier in the evening.

The officers searched the truck but found only some grease spots on the floor and what was described at the trial as a ball of grass "about the size of a quarter." When the police stopped the truck it was occupied by three men: Okie Clay, Larry Watson and the appellant in this case. The police continued their investigation at the scene until about 3:00 a.m. at which time the truck was towed by the police to a local service station where it remained for approximately eight days. A car salesman also testified that he had sold this truck to appellant several days before on the 5th of June.

Paul Petry testified that he was a retail lawnmower salesman in New Paris. He stated that at 3:00 a.m. on June 12th, a tractor lawnmower was delivered to him at his residence in New Paris. At 7:00 a.m. the same day Okie Clay came to Petry's house and asked Petry to sell the tractor for him. The tractor was subsequently identified as the one belonging to the City Cemetery. Petry testified that when Clay came in the morning he drove a blue panel truck and was accompanied by another man whom Petry could not identify.

Appellant was convicted of the offense of theft which is defined in this affidavit and in the statute as (1) knowingly exerting or obtaining unauthorized control over the property of another; (2) with the intent to deprive the owner of the use and benefit of such property.

It is well established that on appeal this Court will not weigh the evidence nor resolve questions concerning the

credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the findings of the trial court. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a jury could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Turner* v. *State* (1972), 259 Ind. 344, 287 N. E. 2d 339. However, it is our function on an appeal of this nature to insure that the State has sustained its burden of proof on the material elements of the crime charged, and that these elements are supported by substantial evidence. *Kondrup* v. *State* (1968), 250 Ind. 320, 235 N. E. 2d 703. As a matter of law a conviction must be supported by substantial evidence from which a jury could have reasonably inferred that the defendant had committed the elements of the offense charged. *New* v. *State* (1970), 254 Ind. 307, 259 Ind. 696.

In the case at bar it is apparent that the evidence presented fails to adequately establish the keystone element of this offense; control of the lawnmower tractor by appellant. There is no evidence that appellant was present at the cemetery at the time when the tractor was presumably stolen. Nor was there evidence that appellant was the man with Okie Clay when he delivered the stolen tractor to Paul Petry. The only point at which appellant appeared in the chain of events on June 11th and 12th was when the truck was stopped by the police at a somewhat indefinite time after the supposed theft and at that time a search of the truck revealed that it was empty. The fact that one of the men with him in the truck at that time was identified as being in possession of the stolen property several hours later cannot be sufficient to infer that appellant had at some time exercised control over the tractor. *Bond* v. *State* (1971), 257 Ind. 95, 272 N. E. 2d 460. Nor does the testimony that appellant was the owner of the truck which was stopped by the police, and that this truck was the same model, color and condition

as the truck at the cemetery, create a reasonable inference that appellant had at some time come in control of the stolen lawnmower.

This Court has held on numerous occasions that if the evidence merely tends to establish a suspicion of guilt it is not sufficient to sustain a conviction. *Tibbs* v. *State* (1970), 255 Ind. 309, 263 N. E. 2d 728; *Crawford* v. *State* (1968), 251 Ind. 437, 241 N. E. 2d 795. This evidence may cast suspicions on appellant but it is insufficient as a matter of law to sustain his conviction.

The judgment is reversed and appellant is ordered discharged.

Givan, Hunter and Prentice, JJ., concur; Arterburn, C.J., dissents without opinion.

NOTE.—Reported in 295 N. E. 2d 592.