## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 20 2020, 8:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark D. Altenhof
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Diana E. Robles,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

February 20, 2020

Court of Appeals Case No.
19A-CR-1799

Appeal from the Elkhart Superior
Court

The Honorable Stephen R.
Bowers, Judge

Trial Court Cause No.
20D02-1801-F5-9

**Robb, Judge.**

# Case Summary and Issue

[1] Following a bench trial, Diana Robles was convicted of one count of Level 5 felony burglary. She was sentenced to four years with the entire sentence suspended to probation. Robles now appeals. The sole issue she raises on appeal is whether there was sufficient evidence to support her conviction. Concluding the evidence was sufficient, we affirm.

# Facts and Procedural History

[2] From July 2016 until March 2017, Richard Viars lived in a trailer park located in Bristol, Indiana. Robles was his next-door neighbor. Viars and Robles enjoyed a friendly relationship and often communicated by Facebook Messenger.

[3] In December 2016, Viars began to fall behind in paying his rent. On February 3, 2017, the trailer park filed in the trial court a notice for immediate possession of Viars' trailer. Following a hearing held on February 17, 2017, the trial court issued an order, finding that the trailer park was entitled to immediate possession of Viars' trailer, and that Viars was required to vacate the premises within forty-eight hours of receiving notice of the order of possession. Viars received notice of the trial court's order on February 22, 2017. However, Viars contacted the trailer park manager and obtained permission to remain in the trailer until 5:00 p.m. on March 4, 2017.

[4]     On February 22, 2017, Viars communicated with Robles by Facebook Messenger and discussed that Viars was being evicted and would be moving. Viars had secured a new apartment in South Bend, Indiana.

[5]     Viars enlisted the help of various friends and family members to help move his personal items from his trailer to the new apartment. The move took place between February 23 and March 4, and involved multiple trips between Bristol and South Bend. On February 23, Robles' son, J.D., and a neighbor helped Viars move some heavy items to the new apartment. The following day, J.D. helped Viars move additional items.

[6]     On February 27, 2017, Viars' father, nephew, niece-in-law, and his sister assisted with the move. They arrived at Viars' trailer and spent the entire day loading and unloading a truck and moving Viars' possessions – making several trips that day between Bristol and South Bend. Viars was not present at the trailer during the move; however, he gave his family members a key to the trailer and permission to remove his personal items.

[7]     Sometime while the group delivered the first load of Viars' items to South Bend, Robles broke the trailer door and the lock and entered Viars' trailer. When Viars' nephew and father returned to the trailer to pick up another load of items, they noticed the trailer door had been pried open and that the lock was "completely off." Transcript of Evidence, Volume 2 at 106. They cautiously entered Viars' trailer and discovered Robles inside. The nephew testified at trial that Robles told him and Viars' father that "there was a break in and she was

making – seeing if anybody was in there cause she saw it was broken too." *Id.* at 107. She stated that she was "just checking on things[.]" *Id.* The men believed her and accepted her help in removing Viars' possessions from the trailer.

[8]     Robles removed several items from Viars' trailer and took them to her trailer. She told Viars' nephew that she was removing the items for safekeeping. Viars' nephew helped to move Viars' large television stand into Robles' trailer because Robles "said she would hold onto it." *Id.* at 118.

[9]     While Viars' nephew and father were still at Viars' trailer, Robles returned to her trailer and sent a message to Viars through Facebook, telling him that "someone broke the door frame" to his trailer. Exhibit Index, Volume 3 at 59. She continued, "I went over to peek in the window . . . and so I just went in then [your nephew] and your dad showed up[.]" *Id.* She negotiated with Viars to keep some of the items she removed from his trailer. However, she did not tell him that she took additional items, including an antique lamp which had belonged to Viars' grandmother and a Blu-ray DVD player.

[10]    Over the next few days, Viars and Robles continued to discuss by Facebook the items that Robles had removed from Viars' trailer and when Viars could retrieve some of the items. However, Robles intimated that she would not return certain items. Viars suggested that they discuss the matter by phone. Sometime between March 4 and March 6, Viars recorded a phone conversation

with Robles where Robles stated she had a "little secret," then admitted she was the one who broke his front door. Tr., Vol. 2 at 22.

[11] A few days later, Viars discovered that Robles had taken his Blu-ray DVD player when he saw Robles had posted it for sale on the Facebook marketplace. Viars then contacted the police to report that Robles had stolen his personal items.

[12] When Officer Osterday and other law enforcement went to Robles' trailer to interview her about Viars' property, Robles changed her story several times, first stating that she did not know what happened to his property, then stating that she had taken abandoned property. When Officer Osterday asked her about the DVD player, she first denied knowledge of the device. When he showed her a print-out of the listing of the device on the Facebook marketplace, she told the officer that the device "had been sold and it was no longer in her house." *Id.* at 88. Robles eventually turned over the DVD player, wrapped in packaging and ready to be shipped to a buyer. She claimed, however, that she was mailing the device to Viars. At trial, Officer Osterday testified that "most of the items that Mr. Viars had reported stolen from his home . . . were in [Robles'] living room[,]" including a television stand and the lamp. *Id.* at 89.

On January 5, 2018, the State charged Robles with Level 5 felony burglary.[1] On May 21, 2019, a bench trial was held, following which the trial court found Robles guilty as charged. On July 8, 2019, the trial court sentenced Robles to four years at the Indiana Department of Correction, with three years and three-hundred sixty-three days suspended. The court gave her credit for two days served, plus equal good time credit, and placed her on reporting probation. Robles now appeals.

# Discussion and Decision

## Sufficiency of the Evidence

Robles argues that the State failed to present sufficient evidence to support her conviction of Level 5 felony burglary. Robles' argument is two-fold. She first contends that the State presented insufficient evidence to establish that Viars' owned the trailer at the time the burglary took place. She next argues that the State failed to prove that she entered Viars' trailer with the intent to commit a felony therein. We first set forth the standard of review then address each argument in turn.

---

[1] The State filed an amended charging information on May 17, 2019, adding one count of theft as an A misdemeanor; however, the theft count was later dismissed.

## A. Standard of Review

In reviewing the sufficiency of the evidence required to support a criminal conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We consider only the evidence supporting the trial court's judgment and any reasonable inferences that can be drawn therefrom. *Id.* Thus, we consider conflicting evidence "most favorably to the trial court's ruling." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (internal quotation omitted). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey*, 907 N.E.2d at 1005. Reversal is appropriate only when no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Drane*, 867 N.E.2d at 146. The evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the findings of the finder of fact. *Id.* at 147.

## B. Ownership of the Trailer

Robles first contends that the State did not present sufficient evidence to support her conviction of Level 5 burglary because it failed to show that Viars owned his trailer at the time the burglary occurred. According to Robles, actual ownership of the trailer "transferred from Viars to [the trailer park] on February 24, 2017[,] . . . two days prior to the date the State says Robles committed the burglary. Because [the trailer park], not Viars, owned the property . . . on or

between February 26, 2017 and March 5, 2017, Robles cannot be convicted of Burglary[.]" Appellant's Brief at 7. Robles maintains that the State named the wrong victim of the burglary and, thus "created a material variance between the charging information and the proof offered at trial[.]" *Id.* We disagree.

[17] In charging Robles, the State alleged that "between the 26th day of February, 2017, and the 5th day of March, 2017, . . . one DIANA E. ROBLES did break and enter the building or structure of another person, to wit: Richard Viars, with intent to commit Theft therein[.]" Appellant's Appendix, Volume 2 at 2. Indiana Code section 35-43-2-1 provides that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony." Thus, in order to prove that Robles committed the charged Level 5 felony, the State was required to prove that she broke and entered the building or structure of another with the intent to commit theft therein.

[18] It is well established that the crime of burglary is an offense against the possession of property and not against the ownership of the property. *Musick v. State*, 258 Ind. 295, 296, 280 N.E.2d 602, 603 (1972). Our courts have previously held that proof of ownership is not absolutely required in a burglary prosecution. *Summers v. State*, 153 Ind. App. 22, 24, 285 N.E.2d 673, 674 (1972). Therefore, the State was not required to prove ownership of Viars' trailer; rather, it was sufficient to show rightful possession *or* ownership. *Wallace v. State*, 896 N.E.2d 1249, 1252 (Ind. Ct. App. 2008), *trans. denied*.

Here, the State made that showing when it presented evidence that Viars had permission from the trailer park manager to remain in the trailer until 5:00 p.m. on March 4. This was sufficient to establish that Viars had rightful possession of the trailer when it was burgled. It was not necessary for the State to establish absolute ownership of the trailer. *Id.* No error occurred here.

## C. Requisite Intent

Robles next contends that her conviction cannot stand because the State presented insufficient evidence of her intent to commit theft within Viars' trailer. She argues that the evidence shows that she had Viars' permission to enter his trailer; she removed his personal items to her trailer for safekeeping; and, Viars was "free to pick [the items] up at his convenience." Appellant's Br. at 11.

"Burglars rarely announce their intentions at the moment of entry," *Gilliam v. State*, 508 N.E.2d 1270, 1271 (Ind. 1987), and indeed many times there is no one around to hear them even if they were to do so. Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering "may be inferred from the circumstances." *Id.* The evidence to prove intent "need not be insurmountable, but only provide a solid basis to support a reasonable inference that the defendant intended to commit the underlying [theft or] felony charged." *Id.* "In other words, the evidence must support each inference – felonious intent and breaking and entering – independently, and neither inference should rely on the other for support." *Baker v. State*, 968 N.E.2d 227,

230 (Ind. 2012). "This is not to say, however, that the same piece of evidence cannot support both inferences." *Id*.

[22] Here, Viars' nephew and father locked Viars' trailer and left to deliver a load of Viars' personal items to the new apartment in South Bend. When they returned to Viars' trailer, they discovered the trailer door had been pried open; the lock was broken; and Robles was inside. Robles told the men that she noticed the door had been broken, and that she was "just checking on things[.]" Tr., Vol. 2 at 107. Robles led the men to believe that she was a concerned neighbor, and they allowed her to remove some of Viars' items to her trailer for safekeeping.

[23] Robles first told Viars that she did not know who had broken his lock and door; however, she later admitted that she broke his door. She told him that she had removed certain items from his trailer; but she did not tell him that she had removed other items. One of the items Robles removed from Viars' trailer was Viars' Blu-ray DVD player, which Robles listed for sale on the Facebook marketplace. When the police interviewed Robles, they found in her trailer items that Viars had reported stolen, including the antique lamp and his DVD player. Although Robles claimed that she was mailing the DVD player back to Viars, the DVD player was wrapped in packaging and ready to be shipped to a buyer.

[24] Robles' sufficiency argument asks us to do no more than reweigh the evidence presented by the State. This we will not do. The evidence presented by the State was such that a reasonable factfinder could infer, beyond a reasonable

doubt, that Robles intended to commit theft when she broke and entered Viars' trailer. We, therefore, find there is sufficient evidence of probative value to support Robles' conviction of burglary.

# Conclusion

[25] For the foregoing reasons, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support Robles' Level 5 felony burglary conviction. Accordingly, the judgment of the trial court is affirmed.

[26] Affirmed.


Bradford, C.J., and Altice, J., concur.